USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/8/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOSE QUEZADA,                       :
                                    :                PRO SE
              Petitioner,           :
                                    : 09 Civ. 2064 (DAB)(THK)
                                    :
     -against-                      :
                                    : **REPORT AND RECOMMENDATION**
ROBERT ERCOLE,                      :
                                    :
              Respondent.           :
------------------------------------X

**TO: HON. DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Petitioner Jose Quezada brings this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, seeking to set aside his June 23, 2004 conviction, obtained upon a plea of guilty, of Manslaughter in the First Degree (N.Y. Penal Law § 125.20). Petitioner was sentenced to an indeterminate term of from seven to twenty-one years in prison, and is currently incarcerated in Green Haven Correctional Facility in Stormville, New York.

Petitioner raises the following two claims in his Petition: (1) he is innocent and was wrongly convicted, as evidenced by the testimony of a witness before the grand jury, which he claims was improperly withheld by the prosecution; and (2) his appellate counsel was ineffective in failing to argue that Petitioner's prosecution was barred by the statute of limitations, and that his right to a speedy trial was violated. Respondent argues that Petitioner's innocence claim is unexhausted, and possibly defaulted, and, in any event, is meritless. (See Respondent's Memorandum of Law in Support of Answer Opposing Petition for a Writ

COPIES MAILED
TO COUNSEL OF RECORD ON 2/8/10

of Habeas Corpus ("Resp't Mem.") at 9-13.)   Respondent further argues that Petitioner's ineffective assistance claim is meritless.

The Court agrees with Respondent and for the reasons that follow recommends that the Petition be dismissed with prejudice.

### FACTUAL BACKGROUND

On the evening of December 25, 1989, Petitioner was selling drugs out of an apartment at 610 West 139th Street, in Manhattan. After arguing with George McElveen in the apartment, Petitioner took a shotgun and shot McElveen, who was only one to two feet away from him, killing him.   At the time, McElveen was unarmed. Petitioner then fled from New York.   He was subsequently arrested in Massachusetts in 1991 on a cocaine trafficking charge. (See Resp't Answer, Ex. C at 3-4.)   Before he was sentenced in Massachusetts, Petitioner escaped from custody.   He was subsequently arrested, pled guilty to the escape charge, and was sentenced on May 21, 1992, to one year in prison. (See id. at 4-5.) On August 25, 1992, Petitioner was sentenced to a term of six to eight years in prison on the cocaine trafficking charge. (See id. at 4.)

On August 8, 1996, while Petitioner was incarcerated in Massachusetts, a New York County grand jury charged Petitioner with Murder in the Second Degree, for the murder of George McElveen, and a warrant was issued for Petitioner's arrest.   A detainer was filed in Massachusetts. (See id. at 5.)   Notwithstanding the

detainer, Petitioner was deported to the Dominican Republic in April of 1997.  He appears to have illegally reentered the United States, as he was arrested in Brooklyn in 1998, pled guilty to Criminal Sale of a Controlled Substance in the Third Degree, and was sentenced to probation. (See id. at 6.) In 2003, after Petitioner was arrested three times on a series of domestic violence charges, a search of a data base turned up the outstanding warrant and Petitioner was arrested on June 28, 2003, on the murder charge underlying this proceeding. (See id. at 7.)

On September 10, 2003, Petitioner's motion to dismiss or reduce the first degree manslaughter charge in the indictment was denied.  A suppression hearing was held on October 8, 2003, and Petitioner's suppression motion was denied. (See Resp't Answer Ex. F.) On May 10, 2004, Petitioner waived his right to appeal and pleaded guilty to Manslaughter in the First Degree, in exchange for an indeterminate sentence of seven to twenty-one years in prison, which was imposed on June 23, 2004. (See Resp't Mem. at 2; Resp't Answer Exs. G & H.)

**PROCEDURAL HISTORY**

Petitioner appealed his sentence and conviction to the Appellate Division, First Department, raising the following claims: (1) it was improper for the trial court to deny suppression of statements Petitioner made to the police about his deportation and stay in Massachusetts; and (2) the sentence imposed was unduly

3

harsh. (<u>See</u> Resp't Answer Ex. J.)   On April 24, 2007, the
Appellate Division affirmed Petitioner's conviction, finding that
Petitioner waived his right to appeal the suppression decision and
his sentence.  In the alternative, the court found the claims to be
without merit. (<u>See</u> Resp't Answer Ex. L.) Petitioner's application
for leave to appeal to the New York Court of Appeals was denied on
June 21, 2007. (<u>See</u> Resp't Answer Ex. M.)

On July 27, 2007, Petitioner moved for a writ of error <u>coram
nobis</u>, claiming that he was innocent and that he received
ineffective assistance of appellate counsel because,
notwithstanding Petitioner's request, appellate counsel failed to
argue that Petitioner's conviction was barred by the statute of
limitations and was secured in violation of his right to a speedy
trial. (<u>See</u> Resp't Answer Ex. M.)  The Appellate Division denied
the motion on December 27, 2007. (<u>See</u> Resp't Answer Ex. Q.)  Leave
to appeal to the New York Court of Appeals was denied on March 20,
2008. (<u>See</u> Resp't Answer Ex. R.)  This action followed.

**DISCUSSION**

**I. Standard of Review**

.   Under the Anti-Terrorism and Effective Death Penalty Act
("AEDPA"), a federal court may grant habeas relief to a state
prisoner only if a state court conviction "resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court

4

of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006); Ernst J. v. Stone, 452 F.3d 186, 193 (2d Cir. 2006). The phrase, "clearly established Federal law," limits the law governing a habeas petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523); accord Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law. Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 410-11, 120 S. Ct. at 1522). A state court decision is based on an

"unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. See Williams, 529 U.S. at 413, 120 S. Ct. at 1523. The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." Id. at 409-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."); Lurie v. Wittner, 228 F.3d 113, 129 (2d Cir. 2000) (same).

In addition, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the

6

evidence presented in the state-court proceeding." <u>Miller-El v.</u>
<u>Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

By its terms, § 2254(d) requires that the deference outlined
above be given "only with respect to a state court adjudication 'on
the merits,' not to a disposition 'on a procedural, or other,
ground.'" <u>Miranda v. Bennett</u>, 322 F.3d 171, 178 (2d Cir. 2003)
(citations omitted). "For the purposes of AEDPA deference, a state
court 'adjudicate[s]' a state prisoner's federal claim 'on the
merits' when it (1) disposes of the claim on the merits, and (2)
reduces its disposition to judgment." <u>Sellan v. Kuhlman</u>, 261 F.3d
303, 312 (2d Cir. 2001). In determining whether a state court has
adjudicated a state prisoner's federal claim on the merits, its
decision must be viewed liberally. <u>See id.</u> ("[A] federal habeas
court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1)
to the state court's decision on the federal claim - even if the
state court does not explicitly refer to either the federal claim
or to relevant federal case law.").

## II. Claim of Innocence

Petitioner contends that he is innocent and that the
prosecutor withheld evidence indicating that another individual,
Marti Santos (a/k/a "Oscar"), murdered George McElveen. Petitioner
supports his claim with a portion of the grand jury minutes in
which a purported eyewitness to the murder testified to Oscar's
shooting McElveen.

7

As context, Respondent explains that after McElveen was shot, Petitioner fled the scene.  The police identified an eyewitness to the crime, Miguel Jimenez, who named Marti Santos as the killer, and testified to that effect before the grand jury.  The grand jury initially indicted Santos for the murder, on May 23, 1991, but the New York County District Attorney's Office determined that Santos was not the killer.  There was then an extensive reinvestigation of the murder, which revealed that Petitioner was the killer.  The Santos indictment was dismissed, and the grand jury indicted Petitioner on August 8, 1996.  At the time, Petitioner was serving a sentence in a Massachusetts state prison for cocaine trafficking. (See Resp't Mem. at 9; Resp't Ex. E ¶ 18.)

This information was disclosed to Petitioner at his arraignment (see Resp't Ex. C at 9-10), and was again disclosed at the time Petitioner filed a motion for inspection of the grand jury minutes, other discovery, and dismissal of the indictment.  It was explicitly set forth in the assistant district attorney's Affirmation in Opposition to the motion. (See Resp't Ex. E ¶ 18.) Moreover, the assistant district attorney agreed to produce the documents relating to the original prosecution of Marti Santos, including the purported eyewitness's grand jury presentation.  The court approved the prosecutor's proposal for disclosure (see Resp't Answer Ex. F), and Petitioner's motion was denied by the trial court, which concluded after inspecting the grand jury minutes that

8

there was sufficient evidence to establish the charges against Petitioner. (See id.)

Following the trial court's decision, Petitioner pled guilty to having shot George McElveen in the chest, using a shotgun while standing one or two feet away from him. (See Resp't Answer Ex. H.)

Respondent contends that Petitioner's innocence claim is unexhausted, and likely, procedurally defaulted, because Petitioner did not raise it in his direct appeal or in his § 440 motion collaterally challenging his conviction. See 28 U.S.C. 2254 (b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the state remedies available in the courts of the State."). The first time this claim was raised was in Petitioner's application for a writ of coram nobis, which was primarily directed at his claim of ineffective assistance of appellate counsel. The trial court denied Petitioner's coram nobis application without explanation. According to Respondent, a writ of error coram nobis is not the appropriate procedure for raising such a claim, since the testimony of the grand jury witness had been known to Petitioner at the time he filed his direct appeal, and was a matter of record. It was also known to Petitioner when he filed his § 440 motion.

Although the Court agrees with Respondent, it need not get into the complexities of New York exhaustion law, since the claim is clearly meritless and there are several reasons it cannot be considered in this proceeding. See 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

As an initial matter, the substantive premise of Petitioner's claim is baseless.   He has not advanced any new evidence demonstrating his innocence. Miguel Jimenez's grand jury testimony was disclosed to Petitioner and his counsel at the time of Petitioner's arraignment, and was again disclosed in response to Petitioner's motion for discovery.   Thus, there can be no claim that the prosecutor unlawfully withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993).  Because Petitioner fails to establish an independent constitutional violation that led to his conviction, his innocence claim is not cognizable in this proceeding.

10

Moreover, in response to Petitioner's motion to dismiss the indictment, the trial court reviewed the grand jury minutes developed after there had been a reinvestigation, and concluded that there was a basis for the charges against Petitioner. And, even after being apprised of the erroneous grand jury testimony, Petitioner chose to plead guilty and acknowledged his guilt. In response to the court's questions, he explicitly stated that he became involved in an argument with George McElveen, who had a shotgun. Petitioner took the shotgun away from McElveen and shot him in the chest, intending to seriously hurt, but not kill, him. At the time of the shooting, Petitioner was one to two feet away from McElveen. (See Transcript of Plea Proceeding, dated May 10, 2004, Resp't Answer Ex. H at 7-10.)

There is thus ample evidence in the record to establish Petitioner's guilt. As the Supreme Court noted in Menna v. New York, 423 U.S. 61, 96 S. Ct. 241 (1975):

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.

Id. at 63 n. 2, 96 S. Ct. at 242 n.2.

Finally, as part of his plea agreement, Petitioner waived his right to appeal the judgment of his conviction; the waiver made an

11

exception for only four issues: (1) a constitutional speedy trial claim; (2) a challenge to the legality of the sentence promised by the judge; (3) Petitioner's competency to stand trial; and (4) the voluntariness of his waiver. (See Resp't Answer Ex. K at 9 n. 7.) Although Petitioner never moved to vacate his guilty plea and his waiver of his appellate rights, his appellate counsel raised the issue in the context of seeking review of the merits of Petitioner's suppression claim. (See Petitioner's App. Br., Resp't Answer Ex. J at 17-18.) In rejecting his appeal, the Appellate Division found Petitioner's waiver to be valid. (See Resp't Answer Ex. L.)   Petitioner does not challenge that conclusion in this proceeding.

Having explicitly waived his right to challenge his conviction, and having failed to raise the validity of that waiver in this proceeding, Petitioner cannot now argue that exculpatory information was withheld and he is innocent of the crime to which he pled guilty.  Following a knowing and voluntary guilty plea, a criminal defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973) (a person raising constitutional violations after pleading guilty is limited in habeas corpus proceedings to attacking the voluntary and intelligent nature of the plea); see also United States v. Randall,

327 Fed. Appx. 255, 256 (2d Cir. 2009); Sullivan v. Goord, No. 05-CV-6060L, 2007 WL 2746900, at *13 (W.D.N.Y. Sept. 19, 2007); Smith v. Donnelly, No. 03 Civ. 5402 (PKC), 2006 WL 1867918, at *5 (S.D.N.Y. July 6, 2006); Mapp v. Phillip, No. 04-CV-1889 (JG), 2005 WL 1541044, at *6 (E.D.N.Y. June 29, 2005); People v. Hansen, 95 N.Y.2d 227, 232, 715 N.Y.S.2d 369, 373 (2000) ("Defendant in essence seeks review of the fact-finding process engaged in by the grand jurors . . . . While his constitutional right to be prosecuted on a jurisdictionally valid indictment survived his guilty plea, his right to challenge this evidence did not.").

Accordingly, Petitioner's Brady/innocence claim should be dismissed.

## III. Ineffective Assistance of Appellate Counsel

Petitioner contends that he received ineffective assistance of appellate counsel because his appellate attorney refused to challenge Petitioner's conviction on statute of limitations or speedy trial grounds. This claim was raised in Petitioner's coram nobis motion and denied on the merits. (See Resp't Answer Ex. Q.) Leave to appeal to the New York Court of Appeals was denied. (See Resp't Answer Ex. R.) The claim is therefore exhausted.

A. Applicable Law

Claims of ineffective assistance of counsel, including appellate counsel, are evaluated under a two-part test. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064

(1984); LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002); Aparicio, 269 F.3d at 95. First, the petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. In applying this first prong of the Strickland test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted). A court may not use hindsight to second guess counsel's tactical choices, see Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004), "simply because the chosen strategy has failed," United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982); accord United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).

In the appellate context, it is not enough for a petitioner to argue simply that counsel did not raise certain non-frivolous arguments on appeal, as no duty to raise every such argument exists. See Evitts v. Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 835 (1985); Aparicio, 269 F.3d at 95; see also Jones v. Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983) (noting that where an attorney exercises reasonable professional judgment in selecting

14

the most promising issues to raise on appeal, a reviewing court should not second-guess that judgment); Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) ("[The] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667 (1986)) (internal quotation marks omitted).   Thus, a petitioner must show that appellate counsel selected grounds for appeal unreasonably, such as by "omitt[ing] significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)); cf. Hemstreet v. Greiner, 367 F.3d 135, 141-42 (2d Cir.) (finding that appellate counsel failed the first Strickland prong when he did not "pursue[] any remedy for the intimidation of a crucial witness" which "clearly stood out in the trial record," and where failure to appeal constituted "a severe mistake in judgment"), vacated on other grounds, 378 F.3d 265 (2d Cir. 2004).

To satisfy the second part of the Strickland test, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Hemstreet, 367 F.3d at 142 ("To establish prejudice in the appellate context, a petitioner must

demonstrate that there was a reasonable probability that his claim would have been successful before the [state's highest court].") (quoting Mayo, 13 F.3d at 534); Aparicio, 269 F.3d at 95 ("A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal."). Failure to show either deficient performance or sufficient prejudice defeats the ineffectiveness claim. See Strickland, 466 U.S. at 700, 104 S. Ct. at 2071.

Because there is no indication that the Appellate Division's denial of Petitioner's coram nobis application was "contrary to" this clearly established standard, the question before the Court is whether the state court decision involved an "unreasonable application" of the Strickland standard to the facts of Petitioner's case. See Sellan, 261 F.3d at 314-15 & n.6. As noted, unreasonable means "objectively unreasonable," Williams, 529 U.S. at 409, 120 S. Ct. at 1495, and involves "some increment of incorrectness beyond error." Sellan, 261 F.3d at 315 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Mance v. Miller, No. 01 Civ. 5243 (JSM), 2002 WL 377533, at *5 (S.D.N.Y. Mar. 8, 2002).

B. Application to Petitioner's Appeal

Petitioner's appellate counsel submitted a well-written and researched appellate brief, arguing that Petitioner's statements to the police should have been suppressed and his guilty plea vacated,

16

that the claim should not be barred by Petitioner's waiver of his appellate rights, and that Petitioner's sentence was unduly harsh. (See Resp't Answer Ex. J.)

It is clear that appellate counsel considered the issues Petitioner now claims she should have raised, as correspondence between them shows that Petitioner urged her to raise speedy trial and statute of limitations claims and she rejected them as lacking merit. (See Resp't Answer Ex. P.)  Thus, appellate counsel made a strategic decision to not pursue the claims on appeal.

Counsel's decision was eminently reasonable, as the claims had no chance of success.  By pleading guilty and waiving his appellate rights (with the four exceptions noted), Petitioner was precluded from raising on appeal a statutory statute of limitations or speedy trial claim. See People v. Parilla, 8 N.Y.3d 654, 659, 838 N.Y.S.2d 824, 826-27 (2007) (statute of limitations and statutory speedy trial claims are waived by pleading guilty); People v. Hansen, 95 N.Y.2d at 231 n.3, 715 N.Y.S.2d at 372 n.3 (statutory speedy trial claim foreclosed by a guilty plea); People v. Friscia, 51 N.Y.2d 845, 847, 433 N.Y.S.2d 754 (1980) (plea of guilty operates as a waiver of statutory speedy trial claim).

In his plea agreement, however, Petitioner did preserve his right to assert a constitutional speedy trial claim.  Nevertheless, that his appellate counsel did not raise such a claim was not

ineffective assistance, because there is no reasonable likelihood that such a claim would have succeeded.

First, had the claim been raised on direct appeal, it would have been deemed unpreserved for review, as neither Petitioner nor his trial counsel raised such a claim at the trial level. See People v. Jeffries, 62 A.D.2d3d 530, 879 N.Y.S.2d 118 (1st Dep't 2009) ("since defendant's speedy trial motion was based entirely on grounds set forth in CPL 30.30 and did not raise a constitutional issue, his constitutional claim is unpreserved and we decline to review it in the interest of justice"); People v. Smith, 66 A.D.3d 1223, 1225, 887 N.Y.S.2d 366 (3d Dep't 2009) ("Defendant did not preserve, by objection, his claim that his constitutional right to a speedy trial was violated."); People v. Bancroft, 23 A.D.3d 850, 850, 803 N.Y.S.2d 824, 825-26 (3d Dep't 2005) ("the constitutional right to a speedy trial may, indeed, be surrendered where as here, a defendant fails to make a pretrial motion to dismiss the indictment or otherwise register an appropriate objection on this ground throughout the course of his prosecution"); People v. Salaam, 36 A.D.3d 969, 970, 826 N.Y.S.2d 509 (2007) (same); People v. Cain, 24 A.D.3d 889, 889, 806 N.Y.S.2d 260, 261 (3d Dep't 2005) (same); People v. Gonzalez, 295 A.D.2d 264, 264, 744 N.Y.S.2d 382, 383 (1st Dep't 2002) (same); see also New York C.P.L. § 470.05(2) (McKinney 2009).

Moreover, although the record was never developed on this issue in the state courts, because Petitioner did not seek a dismissal of the indictment on speedy trial grounds, based on undisputed facts before this Court, it is clear that Petitioner's speedy trial claim had little likelihood of success on its merits.

Although there was a substantial lapse of time between McElveen's murder in 1989, and Petitioner's indictment in 1996, arrest in 2003, and guilty plea in 2004, that very substantial delay standing alone, while of critical importance, is insufficient to establish a deprivation of the constitutional right to a speedy trial. In determining whether a defendant's constitutional right to a speedy trial was violated by an undue delay in commencing a prosecution, New York courts consider: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." People v. Taranovich, 37 N.Y.2d 442, 445, 373 N.Y.S.2d 79 (1975); accord People v. Romeo, 12 N.Y.3d 51, 55, 876 N.Y.S.2d 666, 669-70 (2009); see also Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972) ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of

19

his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.").

Here, the reason for the delay cannot be attributed to fault on the part of the People.  After George McElveen was murdered, Petitioner fled the scene and an eyewitness to the crime claimed that Marti Santos was the killer.  The eyewitness testified before the grand jury and, on May 23, 1991, Santos was indicted for the murder.  While the case against Santos was pending, it was determined that he was not the murderer and a reinvestigation was undertaken.  The Santos indictment was dismissed on March 9, 1993, and a grand jury indicted Petitioner on August 8, 1996.  A delay based on a good faith determination that probable cause was lacking to arrest a defendant, and the need to further investigate a crime, weighs against a defendant claiming a speedy trial violation. See People v. Bradberry, 2009 WL 5126642, at *2, 68 A.D.3d 1688 (4th Dep't Dec. 30, 2009) (unavailability of DNA evidence that kept police from identifying the defendant was justification for delay); People v. Pacheco, 38 A.D.3d 686, 687, 832 N.Y.S.2d 248, 249 (2d Dep't 2007)  (18-year delay between date of crime and date of defendant's indictment "was based on good faith determination that the police lacked probable cause to arrest the defendant until several witnesses came forward . . . ."); People v. Faulkner, 36

A.D.3d 1009, 1010, 826 N.Y.S.2d 526, 527 (3d Dep't 2007) (three-year delay between commission of crime and defendant's arrest did not violate constitutional speedy trial right, "as the delay was occasioned by the continuing police investigation, the instant crimes were serious, and defendant did not demonstrate any prejudice due to the delay").

Moreover, once the indictment was issued, it was determined that Petitioner was serving a prison sentence of six to ten years, in Massachusetts, for cocaine trafficking. (See Resp't Answer Ex. A.)  He was also facing other criminal penalties and the prospect of deportation. (See Resp't Mem. at 9.)   In order to secure Petitioner's presence in New York for arraignment on the murder charge, a warrant for his arrest and a detainer were issued. Nevertheless, within days of completing his Massachusetts sentence, Petitioner was transferred to a county jail and, on April 26, 1997, he was deported.  At some later point, Petitioner illegally re-entered the United States and was arrested in Brooklyn for another crime.  Once his whereabouts were determined, he was returned on the arrest warrant issued for the charge in the instant case, on July 8, 2003, and was arraigned on August 7, 2003. (See id. at 9-10.)

Thus, the long delay in Petitioner's arraignment on the murder charge can hardly be attributed to the prosecution.  Efforts were made to secure Petitioner's presence in New York through the

issuance of a detainer, but the detainer was disregarded and Petitioner was deported. His location was not confirmed until he was rearrested in Brooklyn some six years later, after he illegally re-entered the country. Compare People v. Romeo, 12 N.Y.3d at 57, 876 N.Y.S.2d at 670 (defendant's location was known, he made repeated requests to be arraigned before being sent to Canada, the prosecution was placed on notice of a potential speedy trial violation, and, yet, the prosecution agreed to allow the defendant to be prosecuted in Canada before arraigning him on the charge in New York).

As for the remaining factors to be considered in determining whether the right to a speedy trial was violated, here the charge against Petitioner was a serious one — murder — and his pretrial detention on the charge in issue was not prolonged, as he was arrested on July 8, 2003 and arraigned on August 7, 2003. (He was already being detained for another crime.) There is no claim that there was any improper delay in the proceedings until Petitioner pled guilty on May 10, 2004. Finally, Petitioner does not assert any specific prejudice resulting from the delay. See People v. Salcedo, 304 A.D.2d 309, 757 N.Y.S.2d 284 (1st Dep't 2003) (16-year delay in commencing prosecution did not warrant dismissal of the indictment "inasmuch as the original charge against defendant was extremely serious, defendant was not incarcerated during most of the period of delay and has made no showing of specific prejudice

22

attributable to the delay, and since the delay resulted from inability to locate defendant despite reasonably diligent efforts"); People v. Tsang, 284 A.D.2d 218, 728 N.Y.S.2d 436 (1st Dep't 2001) (where 20-year delay in commencement of prosecution was not designed to gain a tactical advantage and resulted from inability to locate the defendant, there was a serious charge of murder against the defendant, and there was no showing of specific prejudice, it was proper to deny motion to dismiss the indictment).

In sum, because any speedy trial claim would have been denied as unpreserved for appeal, and it is unlikely that the claim would have succeeded on its merits, appellate counsel was not ineffective for failing to raise the claim. It follows that the state courts did not unreasonably apply the Strickland standard in rejecting Petitioner's ineffective assistance claim. Accordingly, Petitioner's ineffective assistance of counsel claim should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice. Furthermore, Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir.), cert. denied, 531 U.S. 873, 121 S. Ct. 175 (2000). This Court

further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: February 8, 2010
       New York, New York

24